**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **DANIEL C. MICHAEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:08-01189** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security

denying the Claimant's application for disability insurance benefits (DIB) under Title II of the Social

Security Act, 42 U.S.C. §§ 401-433. This case was referred to the undersigned United States

Magistrate Judge by Standing Order filed October 16, 2008, to consider the pleadings and evidence,

and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28

U.S.C. § 636(b)(1)(B). (Document No. 3.) Presently pending before the Court are the parties cross-

Motions for Judgment on the Pleadings (Document Nos. 12 and 15.), and Claimant's Reply.

(Document No. 16.)

The Plaintiff, Daniel C. Michael (hereinafter referred to as "Claimant"), filed an application

for DIB on December 29, 2005 (protective filing date), alleging disability as of February 12, 2003,

due to chronic back pain, fibromyalgia, restless leg syndrome, high blood pressure, high cholesterol,

nerves, and arthritis.[1] (Tr. at 96, 97-99, 128.) The claim was denied initially and upon

---

[1] Claimant alleged the additional impairment of diabetes as of January 19, 2006, as part of his application on appeal. (Tr. at 74, 163.)

reconsideration. (Tr. at 64-65, 66-68, 74-76.) On February 2, 2004, Claimant requested a hearing

before an Administrative Law Judge ("ALJ"). (Tr. at 77.) A hearing was held on December 6, 2007,

before the Honorable Mark A. O'Hara. (Tr. at 22-63.) On January 25, 2008, the ALJ issued a

decision denying Claimant's claim for benefits. (Tr. at 11-21.) The ALJ's decision became the final

decision of the Commissioner on August 20, 2008, when the Appeals Council denied Claimant's

request for review. (Tr. at 1-5.) On October 16, 2008, Claimant brought the present action seeking

judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has

the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which . . . can be expected to last for a

continuous period of not less than 12 months . . . ."  42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of

disability claims.  20 C.F.R. § 404.1520 (2008). If an individual is found "not disabled" at any step,

further inquiry is unnecessary.  Id. § 404.1520(a). The first inquiry under the sequence is whether

a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant

is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c).

If a severe impairment is present, the third inquiry is whether such impairment meets or equals any

of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id.

§ 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the

fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.

20 C.F.R. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of

disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, February 12, 2003. (Tr. at 13, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from degenerative disc disease of the spine, status-post lumbar laminectomy, morbid obesity, bilateral plantar fasciitis, and diabetes mellitus, which were severe impairments. (Tr. at 13, Finding No. 3) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or medically equal the level of severity of any listing in Appendix 1. (Tr. at 14, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for sedentary work, as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work (lift or carry 10 pounds occasionally and less than 10 pounds frequently, stand or walk about 2 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday) that accommodates the ability to alternately sit/stand at his own discretion, that involves no crawling or climbing ladders, ropes, or scaffolds and other postural activities only occasionally (climbing stairs or ramps, balancing, stooping, kneeling, and crouching), and that avoids concentrated exposure to workplace hazards (e.g. moving machinery or unprotected heights) and even moderate exposure to vibration.

(Tr. at 15, Finding No. 5.)(footnote omitted). At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 19, Finding No. 6.) On the basis of testimony of a Vocational

Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as an interviewer, information clerk/receptionist, and a surveillance system monitor, at the sedentary level of exertion. (Tr. at 20 Finding No. 10.) On this basis, benefits were denied. (Tr. at 21, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

Claimant's Background

Claimant was born on September 27, 1959, and was 48 years old at the time of the administrative hearing, December 6, 2007. (Tr. at 20, 29, 97.) Claimant has a high school education and is able to communicate in English. (Tr. at 20, 29, 136.) In the past, he worked as a header operator, an assembler, a truck driver, and a golf course laborer. (Tr. at 19, 58, 129, 138-44.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and summarizes the relevant medical evidence, which will be discussed in relation to Claimant's arguments.

Claimant suffered a work-place injury to his neck and back on September 4, 2002, when he fell backwards onto some metal equipment and a co-worker fell on top of him with a pipe. (Tr. at 16, 300.) The base of Claimant's spine was bruised and his xiphoid process was cracked and eventually removed. (Tr. at 16, 300.) X-rays of the lumbar spine revealed partial sacralization of the L6 vertebrae on the right and spondylolysis of L5 without spondylolisthesis. (Tr. at 16, 196.) Small spurs also were seen in the anterior aspect of L4. (Id.) Claimant returned to work, but on February 18, 2003, reported to his family physician, Dr. Wayne L. Brackenrich, complaints of increased back pain. (Tr. at 387-88.) Claimant reported that the pain was so severe that he could hardly walk. (Tr. at 387.) He described the pain as a "severe, constant, dull pain," which he rated on a pain level scale of zero to ten, at level ten. (Id.) The pain occasionally radiated down the left buttock and left leg behind the thigh. (Id.) The pain was worse when he tried to lower himself to a seated position or to rise from a seated position. (Id.) Physical exam revealed an area of charcoal gray discoloration on his back, which resembled a tattoo and was located right of midline on the presacral region. (Id.) Dr. Brackenrich surmised that the discoloration resulted from the previous contusion and was the result of iron deposition due to the amount of bleeding that occurred under the skin. (Id.) Claimant was exquisitely tender to palpation in that area. (Id.) Dr. Brackenrich diagnosed a history of severe lumbosacral contusion with hematoma formation, permanent tattoo effect of the right presacral region, bilateral sacroiliac pain with secondary lumbosacral muscle spasm, and probable piriformis

muscle syndrome on the left. (Tr. at 388.) Dr. Brackenrich prescribed Valium and Lorcet for muscle spasm and pain, and gave Claimant a work excuse until February 24, 2003, which subsequently was extended until April 6, 2003. (Tr. at 386, 388.)

A MRI of the lumbar spine on March 3, 2003, revealed mild degenerative changes and mild bulging at L3-4 and L4-5. (Tr. at 382.) It was noted that the hematoma posterior to the sacrum almost had resolved. (Id.) On March 4, 2003, Claimant presented with continued complaints of sacroiliac and presacral pain with some occasional pain in the right buttock. (Tr. at 386.) Dr. Brackenrich noted however, that Claimant took less pain medication than before. (Id.) Physical exam revealed negative bilateral straight leg testing. (Id.) Dr. Brackenrich advised Claimant to avoid any heavy lifting or bending. (Id.)

Dr. Brackenrich referred Claimant to Dr. Cyrus E. Bakhit, M.D., at the Pain Management Center of Roanoke for pain management treatment. (Tr. at 300-10.) On April 18, 2003, Claimant reported on initial evaluation that his pain then was at a level four or five out of ten, that his least pain was at a level two or three, and at worst, his pain was a level seven or eight. (Tr. at 301.) Claimant indicated that he experienced horrible or excruciating pain two or three days per week. (Id.) He described the pain as moderate and severe throbbing, cramping, hot or burning, and aching pain. (Id.) Claimant reported that he experienced numbness and tingling associated with his pain. (Id.) The pain was reported to be somewhat worse with sitting, walking, bending forward, bending to the same side, lying down or resting, driving, coughing or sneezing, cold and damp weather, and sexual activity. (Id.) Claimant reported that the pain was made a lot worse with standing, bending backward, bending to the opposite side, lifting, and overhead activity. (Tr. at 301-02.) Regarding his activities of daily living, Claimant reported that he was able to walk, sit, stand, climb stairs, drive

a car, and dress himself. (Tr. at 302.)

Dr. Bakhit noted that Claimant had undergone physical therapy since April 2, 2003, and had some trigger point injections in the buttocks. (Tr. at 302.) His medications included Hydrocodone, Zanaflex, and Bextra, which reduced Claimant's pain partially. (Tr. at 303.) Physical exam revealed that Claimant could walk in a straight line without difficulty and could heel and toe walk normally. (Tr. at 308.) Palpation of the lumbar spine revealed bilateral paravertebral tenderness and spasm and bilateral SI joint tenderness, as well as midline tenderness. Range of motion was reduced and straight leg raising testing was negative. (Tr. at 309.) Dr. Bakhit diagnosed degeneration of the intervertebral lumbosacral disc; facet arthropathy or spondylosis without myelopathy, dorsal arthritis, osteoarthritis, or spondylarthritis; sacroiliitis; and myofascial syndrome. (Tr. at 310.) Dr. Bakhit recommended SI injections to be followed with facet blocks if necessary. (Id.)

The EMG/NCS testing on July 24, 2003, revealed no evidence of peripheral neuropathy or lumbar sacral radiculopathy. (Tr. at 16-17, 200-01.) A MRI of the lumbar spine on July 26, 2004, revealed left paracentral disc extrusion at L3-4. (Tr. at 276.) The findings otherwise were unchanged from the March 3, 2003, examination. (Id.) A discography on July 31, 2003, revealed concordant pain at the L5-SI level and a radial tear and disc herniation at L4-5. (Tr. at 288.)

On August 17, 2003, Claimant was examined by Dr. James Michael Vascik, M.D., a neurosurgeon, because he was miserable, taking narcotics, and wanted something done. (Tr. at 273-74.) Dr. Vascik noted that Claimant almost was in tears because of the severe pain and had gained thirty pounds. (Tr. at 273.) He further noted that though he could not make any guarantee, he "certainly [had] a good chance of helping [Claimant]." (Tr. at 274.) Claimant underwent left extensive decompressive hemilaminotomy at L3-4, long foraaminotomy, mesial facetectomy, and

a laminotomy of the superior lamina of L4 to the mid-body of L4, on August 23, 2004 at Carilion

Roanoke Memorial Hospital, by Dr. Vascik. (Tr. at 17, 203-04.) Prior to the surgery, Dr. Vascik

advised Claimant that "there was no way I could make a guarantee as this man was hurt for almost

two years. The longer somebody hurts, the longer it takes him to get better if at all." (Tr. at 203.)

Following the surgery, Claimant advised Dr. Vascik on September 7, 2004, that he had

walked 34 miles in two weeks and was very pleased with the decompression. (Tr. at 269.) Claimant

reported that he had no pain in his left leg and only a little bit of pain in the right, which Dr. Vascik

thought was due to his using muscles not used in a long time. (Id.) Claimant continued his recovery

from the surgery and reported that he walked four miles a day, that he felt great, and that he was

building up his strength. (Tr. at 257.) Claimant thought that "it was a miracle for three weeks with

no pain whatsoever." (Id.) Three weeks after surgery, however, Claimant reported that when he bent

over to pick up something, he almost fell to the ground with incredible back pain. (Tr. at 257, 265.)

He reported back pain radiating up toward the base of his neck and down the left leg. (Tr. at 265.)

A MRI of the lumbar spine on October 15, 2004, revealed a tiny fluid collection from the surgery

and a facet hypertrophy and mild disc bulge at L4-5. (Tr. at 263-64, 272.) Dr. Vascik noted that the

MRI did not reveal any new disc rupture. (Tr. at 263.) He noted that Claimant had some scar tissue,

but that it was not on his nerve root. (Id.) Consequently, he recommended very aggressive physical

therapy. (Id.)

Claimant attended physical therapy from September, 2004, through March, 2005. (Tr. at 210,

220-46.) On February 8, 2005, Claimant returned to Dr. Vascik and reported significant pain in his

back, interscapular region, down both legs, and into his calves. (Tr. at 257.) Dr. Vascik noted that

Claimant was still overweight and that he applauded Claimant's effort to come off his narcotic

medications. (Id.) On February 23, 2005, Michelle Harding, a physical therapist, completed a Functional Capacity Evaluation, and opined that Claimant was capable of performing a limited range of sedentary work. (Tr. at 17, 211-16.) Ms. Harding further opined that Claimant could sit for one hour, and occasionally stand for ten minutes and walk for 12 minutes at a time. (Tr. at 17, 213.) Ms. Harding noted that Claimant had only five out of 14 consistent tests, which indicated self-limiting behavior. (Tr. at 17, 211, 215.) Dr. Vascik agreed with the evaluation to the extent that Claimant could try to perform sedentary work. (Tr. at 19.)

Dr. Vascik opined on April 7, 2005, that Claimant would not require surgery in the future based on his injury. (Tr. at 253.) Claimant returned to Dr. Bakhit for pain management treating on April 29, 2005. (Tr. at 17, 283.) Dr. Bakhit added a Lidoderm patch to Claimant's treatment and administered a series of steroid injections in his lumbar spine. (Tr. at 17, 279-84, 286.) Dr. Brackenrich sent a letter to Claimant's Workers' Compensation attorney on April 11, 2005, which indicated that Claimant was temporarily unable to work. (Tr. at 17, 356.) On September 29, 2005, Claimant continued to report to Dr. Bakhit significant back pain with radiation to the buttocks and lower extremities, and indicated that the injections did not help his pain. (Tr. at 17, 277.)

A radiology report on April 20, 2006, demonstrated mild dextroscoliosis of the mid-lumbar region. (Tr. at 316.) On April 25, 2006, Dr. Kip Beard, M.D., a consultative examiner, observed that Claimant required no ambulatory aids and was able to stand unassisted. (Tr. at 17, 313.) Claimant was able to arise from his seat, step up and down from the examination table, and was able to heel, toe, and tandem walk. (Tr. at 17, 313-15.) Claimant exhibited muscle tenderness but no spasm and limited flexion. (Tr. at 17, 314.) He was able to stand on one leg alone and could squat halfway with back pain. (Tr. at 17, 314-15.) Straight leg raising testing was positive at 40 degrees with back pain

9

bilaterally. (Tr. at 17, 314.) Claimant reported that the Hydrocodone and Baclofen helped a little bit with his pain. (Tr. at 17, 312.) Dr. Beard diagnosed lumbosacral strain with a history of disc herniation and chronic musculoskeletal lower back pain with bilateral radicular symptoms. (Tr. at 17, 315.)

The two state agency reviewing physicians, Dr. A. Rafael Gomez, M.D., and Dr. Rogelio T. Lim, M.D., completed form Residual Functional Capacity Assessments on May 4, 2006, and January 9, 2007, respectively. (Tr. at 318-25, 408-15.) Both physicians opined that Claimant was capable of performing light exertional level work, with occasional postural limitations and no climbing of ladders, ropes, or scaffolds. (Id.) They also opined that Claimant should avoid concentrated exposure to workplace hazards and moderate exposure to vibration. (Tr. at 18, 322, 412.)

Dr. Brackenrich opined on October 12, 2006, that Claimant could lift 15 pounds, stand for one hour, and sit for two hours at a time. (Tr. at 347.) He further opined that Claimant could carry objects weighing less than five pounds and could neither crawl, stoop, squat, nor climb. (Id.) A lumbar MRI on January 22, 2007, revealed two herniated discs at L1-2 and L3-4, and a bulging disc at L4-5 with epidural fibrosis at the site of the previous operation. (Tr. at 18, 422.)

Claimant was referred to Dr. John Schmidt, a neurologist, and on August 21, 2007, Dr. Schmidt noted Claimant's complaints of low back pain. (Tr. at 18, 417.) Claimant described the pain as aching, stabbing, throbbing, and sharp in nature, and rated the pain at a level seven out of ten. (Id.) His symptoms were made worse with standing, bending, or walking, and were made better with lying down. (Id.) Claimant also complained of numbness in his left hip and back and that his back felt like it gave away. (Id.) He further complained of weakness in his back and legs. (Id.) On

physical exam, Claimant exhibited tenderness in the lower spine, normal straight leg raising testing, and normal motor strength and tone, as well as sensation. (Tr. at 18, 419.) Dr. Schmidt opined that Claimant was "permanently totally disabled from the work force from the combined [e]ffects of these injuries." (Tr. at 18, 420.)

<u>Claimant's Challenges to the Commissioner's Decision and Defendant's Responses</u>.

Claimant first alleges that the ALJ's evaluation of Claimant's credibility regarding his low back and leg pain is not supported by substantial evidence. (Document No. 12 at 1, 12-16.) Claimant asserts that because the ALJ found that Claimant "met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain alleged (<u>Id.</u> at 13), [Claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test." (<u>Id.</u> at 13.) In finding that Claimant's testimony was not entirely credible, Claimant alleges that the ALJ made several errors. (<u>Id.</u> at 14.) First, Claimant asserts that the medical evidence, particularly the treatment notes of Drs. Vascik and Schmidt, was consistent with Claimant's testimony of continued, chronic back and leg pain. (<u>Id.</u>) Claimant notes that the two neurosurgeons who evaluated him, Drs. Vascik and Schmidt, indicated that despite decompression surgery on Claimant's back, it was possible that his condition would not improve and that he would continue to suffer from chronic back and leg pain. (<u>Id.</u>)  Second, Claimant asserts that the ALJ improperly relied on the February 25, 2005, functional capacity evaluation to find that Claimant was capable of performing sedentary work. (<u>Id.</u> at 14-15.) According to Claimant, the ALJ failed to note that the "physical therapist who administered the evaluation indicated that [Claimant] was taking a beta blocker which could have decreased the physiological response to increased pain." (<u>Id.</u>) Third, and finally, Claimant asserts that the ALJ failed to consider the effect of Claimant's weight gain on his

back pain as required by Social Security Ruling 02-1p. (Id. at 15-16.) Though the ALJ considered Claimant's obesity at steps two and three of the sequential analysis, Claimant contends that the ALJ did not consider the effect of his obesity when he assessed the credibility of his back and leg pain. (Id.)

Claimant next alleges that "the testimony of the vocational expert is not substantial evidence to establish that there are jobs in significant numbers in the national economy [that Claimant] can do." (Document No. 12 at 1, 16-19.) Specifically, Claimant asserts that the ALJ failed to indicate how frequently Claimant needed to alternate positions between sitting and standing as required by Social Security Ruling 96-9p. (Id. at 17.) Although the ALJ acknowledged Dr. Meredith's standing limitations, the ALJ failed to indicate the weight given to this opinion. (Id.) Claimant further asserts that the ALJ failed to inform the VE of all Claimant's limitations by excluding from his hypothetical questioning of the VE that Claimant's recent memory was moderately deficient. (Id. at 18.) Finally, Claimant asserts that the VE's testimony is contrary to Social Security Ruling 96-9p, which indicates that an individual who is unable to stoop, generally would be found disabled, because Dr. Brackenrich indicated that Claimant was unable to stoop. (Id.)

Claimant finally alleges that this matter should be remanded to the Commissioner for further consideration of new and material evidence. (Document No. 12 at 19-20.) Claimant attaches to his Brief the abnormal results of an EMG study performed on March 17, 2009. (Id. at 19, Exhibit 1.) Claimant notes that the study "suggests left L5 nerve root denervation (radiculopathy) and, to a lesser extent, acute and chronic denervation of the left medial gastronemius, suggesting left S1 radiculopathy." (Id. at 19.) Claimant asserts that the evidence is new in that it provides objective evidence of continued nerve damage to his lower extremities resulting from his workplace injury,

and that it is material because it may result in a different decision by the Commissioner. (Id. at 20.) Claimant asserts that good cause exists for not submitting the evidence while the claim was pending before the Commissioner because the evidence was not in existence. (Id.)

Assessing Claimant's contentions, the Commissioner asserts that "[a] claimant's own description of his symptoms is never sufficient to establish disability." (Document No. 15 at 9.) The Commissioner asserts that the ALJ's credibility determination is supported by Claimant's minimal treatment, the medical opinions of record, and Claimant's level of functioning in his daily activities. (Id. at 9-14.) Respecting Claimant's obesity, the Commissioner asserts that the ALJ "carefully considered [Claimant's] obesity throughout [his] decision and the combination of [Claimant's] impairments on his ability to work." (Id. at 14.) The Commissioner points out that Claimant failed to "articulate how his obesity further impaired his ability to work, other than merely speculating that it affected his back and leg pain." (Id. at 15.)

Respecting the VE's testimony, the Commissioner asserts that the ALJ's hypothetical questions properly included only those limitations supported by the record. (Document No. 15 at 16.) Though Claimant contends that the ALJ failed to address the frequency of a sit and stand option, the Commissioner notes that the ALJ found that Claimant could perform work that allowed him to sit and stand "at his discretion." (Id.) The Commissioner further asserts that Claimant has improperly asked the Court to re-weigh the evidence to find a memory-related limitation that should have been included in the ALJ's hypothetical questions to the VE. (Id.) Claimant however, neither alleged a memory problem that affected his ability to work, nor mentioned such a problem to Dr. Bakhit or the ALJ at the administrative hearing. (Id. at 17.) The Commissioner points out that the record contains no medical opinion finding a disabling mental limitation. (Id.) Similarly, the Commissioner

asserts that Claimant improperly has asked the Court to re-weigh the evidence to find that Claimant cannot stoop. (Id. at 17-18.) The substantial evidence however, according to the Commissioner, supports the ALJ's assessment that Claimant could occasionally stoop. (Id.)

Finally, the Commissioner asserts that the evidence submitted after the ALJ's decision is neither new nor material. (Document No. 15 at 18-19.) The Commissioner asserts that the evidence is not new because "it is duplicative and cumulative, as the evidence of record already shows that [Claimant] had a lower back impairment, producing radicular symptoms." (Id. at 18.) The Commissioner further asserts that the evidence is not material because it fails to "establish disability during the relevant time period and [fails to] establish any new work-related limitations." (Id. at 19.) The evidence also fails to establish any new functional limitations not accounted for by the ALJ. (Id.)

Analysis.

1. Evidence Submitted to the Court After the ALJ's Decision.

The Court first will address Claimant's request for remand based on a claim of new and material evidence as the undersigned finds that it is dispositive of the issues in this matter. In considering Claimant's motion to remand, the Court notes initially that the Social Security Regulations allow two types of remand. Under the fourth sentence of 42 U.S.C. § 405(g), the Court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97 (1991). Where there is new medical evidence, the Court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42

14

U.S.C. § 405(g); Melkonyan, 501 U.S. at 97. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. Melkonyan, 501 U.S. at 98.

To justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).[2] In Borders, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four prerequisites are met:  (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence.  Id.

Claimant has submitted to the Court an EMG report dated March 17, 2009, conducted by Dr. William A. Merva, M.D., which indicates "acute and chronic denervation in 4 sites of the [left]

---

[2] Within relevant case law, there is some disagreement as to whether 42 U.S.C. § 405(g) or the opinion in *Borders* provides the proper test in this circuit for remand of cases involving new evidence.  This court will apply the standard set forth in Borders in accordance with the reasoning previously expressed in this district:

> The court in *Wilkins v. Secretary of Dep't of Health & Human Servs.*, 925 F.2d 769 (4th Cir. 1991), suggested that the more stringent  *Borders* four-part inquiry is superseded by the standard in 42 U.S.C. 405(g).  The standard in § 405(g) allows for remand where "there is new evidence which is material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." However, *Borders* has not been expressly overruled.  Further, the Supreme Court of the United States has not suggested that *Borders'* construction of §  405(g) is incorrect.  Given the uncertainty as to the contours of the applicable test, the Court will apply the more stringent *Borders* inquiry.

*Brock v. Secretary, Health and Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D. W. Va. 1992) (citations omitted).

anterior tibialis [which] suggests [left] L5 nerve root denervation (radiculopathy) to a lesser extent acute and chronic denervation in the [left] medial gastronemius, suggest[ing left] SI radiculopathy." (Document No. 12, Exhibit 1.) Claimant asserts that this evidence "provides objective medical evidence that [he] continues to suffer nerve damage to his lower extremities resulting from his 2002 back injury." (Document No. 12 at 20.) The Commissioner asserts that the material is duplicative and cumulative of the evidence of record already showing that Claimant "had a lower back impairment, producing radicular symptoms." (Document No. 15 at 18.) The Commissioner notes that despite Claimant's radicular symptoms, Drs. Gomez and Lim opined that Claimant retained the capacity for a reduced range of light work. (Id.) The Commissioner further asserts that the evidence is not material because it neither establishes disability during the relevant time period nor establishes any new functional limitations. (Id. at 19.) The Commissioner contends that "the ALJ already accounted for any work-related limitations resulting from [Claimant's] lower back impairment by restricting [Claimant] to a reduced range of sedentary work." (Id.)

The undersigned finds that the evidence meets the criteria enunciated in Borders, and finds that the evidence is material to the ALJ's assessment of Claimant's pain and credibility, as well as his assessment of the opinion evidence, at step four of the sequential analysis. In the ALJ's combined assessment of Claimant's pain and credibility and of the opinions of Drs. Brackenrich and Schmidt, he specifically noted that "EMG/nerve conduction studies show no evidence of peripheral neuropathy (or lumbar radiculopathy for that matter)." (Tr. at 19.) Given the ALJ's emphasis on the lack of this particular objective evidence, that is radiculopathy, in assessing Claimant's credibility and weighing of the medical opinions, the undersigned finds, therefore, that the evidence is not simply cumulative as suggested by the Commissioner and is relevant to the determination of

disability at the time Claimant's application was filed. The Commissioner correctly points out that the evidence does not establish any functional limitations. While this is true, the undersigned finds that the objective evidence may lend further support to Claimant's subjective complaints and cause the ALJ to examine the evidence in a new light. The only EMG report that was available for the ALJ's review was conducted on July 24, 2003, prior to Claimant's back surgery, which did not suggest any neuropathy or radiculopathy. Though the record is advanced with Claimant's subjective complaints of radiculopathy, there is no other objective evidence of the same. Consequently, the undersigned finds that the evidence is new, and not simply cumulative. Furthermore, the study was conducted after the ALJ's decision, and therefore, satisfies the good cause criteria for not having been presented earlier. Accordingly, the undersigned finds that all of the Borders criteria have been met, and recommends that the District Court remand this matter for further consideration of the evidence.

2. Pain and Credibility Assessment.

A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2008); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.  Id. at 595.  When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's  subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective

17

medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence

of pain should be gathered and considered, but the absence of such evidence is not determinative.

Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are

considered to diminish her capacity to work to the extent that alleged functional limitations are

reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and

416.929(c)(4) (2008).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your
> prior work record, your statements about your symptoms, evidence submitted by
> your treating, examining, or consulting physician or psychologist, and observations
> by our employees and other persons. . . .  Factors relevant to your symptoms, such
> as pain, which we will consider include:
>
>> (i) Your daily activities;
>>
>> (ii) The location, duration, frequency, and intensity of your pain or other
>> symptoms.
>>
>> (iii) Precipitating and aggravating factors;
>>
>> (iv) The type, dosage, effectiveness, and side effects of any medication you
>> take or have taken to alleviate your pain or other symptoms;
>>
>> (v) Treatment, other than medication, you receive or have received for relief
>> of your pain or other symptoms;
>>
>> (vi) Any measures you use or have used to relieve your pain or other
>> symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every
>> hour, sleeping on a board, etc.); and
>>
>> (vii) Other factors concerning your functional limitations and restrictions due to pain
>> or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2008).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically
> determinable physical or mental impairment(s)--i.e., an impairment(s) that can be

18

shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the

individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 15-16.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to generally produce the alleged symptoms." (Tr. at 18.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 16-19.) At the second step of the analysis, the ALJ concluded that Claimant's "contentions concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 18.)

Claimant correctly notes that at step two of the pain and credibility assessment, he was entitled to rely exclusively on subjective evidence to prove . . . that his pain is so contentious and/or severe that it prevents him from working a full eight hour day." Hines v. Barnhart, 453 F.3d 559, 565 (4th Cir. 2006).

> This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work. They most certainly are. Although a claimant's allegations about [his] pain may not be discredited solely

20

because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers. Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996).

Hines, 453 F.3d at 565 n.3.

In assessing Claimant's credibility at step two, the ALJ summarized Claimant's testimony that he stopped working due to work-related chest and back injuries; that he experienced back pain that radiated down both legs and into his feet; that the back pain prevented him from sitting, twisting, turning, or standing and walking in excess of ten minutes without resting for ten or fifteen minutes; and that he took Hydrocodone for pain, which lessened but did not relieve his pain. (Tr. at 16, 39.) The ALJ also summarized Claimant's reported activities of daily living to have included folding a few towels; mowing grass on a riding mower, though he could barely walk when he got off the mower; caring for and dressing himself with difficulties shaving; driving, though twisting hurt his shoulders; and watching television while sitting or lying down. (Tr. at 16, 40-43.) Additionally, the ALJ noted Claimant's written reports on December 20, 2006, that indicated he attended church two or three times a week; performed light household chores, including washing dishes, doing laundry, and preparing simple meals; drove to shop for groceries and clothing; and played computer games. (Tr. at 19, 174-81.)

The ALJ also summarized the medical and opinion evidence of record. (Tr. at 16-19.) The ALJ adopted the opinion of Dr. Gomez, the state agency reviewing consultant, but reduced his residual functional capacity to the sedentary exertional level in view of Ms. Harding's February 23, 2005, functional capacity evaluation. (Tr. at 19.) The ALJ rejected the opinion of Drs. Brackenrich to the extent that it precluded sedentary work "because it [was] not supported by the longitudinal

record with its generally routine and conservative treatment, including his own treatment notes, as well as the fact that the FCE found the [C]laimant capable of sedentary work, with which Dr. Vascik agreed." (Id.) The ALJ likewise rejected Dr. Schmidt's conclusory opinion of disability because it was not supported by the longitudinal record and Ms. Harding's functional capacity evaluation, which was based on objective testing. (Id.)

In alleging that the ALJ's credibility assessment is not supported by substantial evidence, Claimant first asserts that the medical evidence supports his complaints of continued, chronic back and leg pain. (Document No. 12 at 14.) Specifically, Claimant notes that both his neurosurgeons, Drs. Vascik and Schmidt, indicated that despite back surgery, it was possible that Claimant's symptoms would not improve. (Id.; Tr. at 203, 269, 420.) Second, Claimant asserts that the ALJ improperly relied on the February 25, 2005, functional capacity evaluation to demonstrate that Claimant was capable of performing sedentary exertion because the ALJ failed to note that Claimant took a beta blocker, which Ms. Harding stated may have decreased his physiological response to pain. (Document No. 12 at 14-15; Tr. at 215.) The Commissioner asserts that the ALJ correctly found that Claimant was not entirely credible because his minimal treatment and benign findings of his physicians, together with the opinion evidence of record, undermined his claims of disabling pain. (Document No. 15 at 9-12.)

In finding Claimant to be not entirely credible, the ALJ focused on his symptom magnification on Waddell testing as part of Ms. Harding's functional capacity evaluation, his activities of daily living, the absence of objective signs of radiculopathy, and the opinion evidence of record. Regarding symptom magnification, the Commissioner correctly points out that Ms. Harding determined Claimant presented a consistent effort on only five of 14 tests, which indicated

that Claimant exaggerated his symptoms. The Commissioner further points out that Claimant neither was prescribed any assistive devices despite his complaints of his legs giving out, nor took pain medications consistent with someone in apparent distress. (Document No. 15 at 11-12.) However, with respect to pain medications, the record is clear that Claimant feared becoming addicted to prescription pain relievers, and therefore, did not take them often or as prescribed, despite his continued complaints of pain. (Tr. at 257.) Furthermore, though the ALJ noted that the pain medication "lessens, if not entirely relieves, his pain" (Tr. at 19.), Claimant testified at the administrative hearing that Hydrocodone does not "omit the pain but it does lessen it" (Tr. at 39.), and that Cymbalta and Lortab "just takes the edge off" but does not "knock it clear out." (Tr. at 44.)

The undersigned already has addressed the absence of the radiculopathy, but notes that the record is replete with references to Claimant's subjective complaints of back pain, which radiated up to his shoulders and primarily down to his buttocks and legs. In rejecting the opinions of Dr. Brackenrich, Claimant's treating physician, and Dr. Schmidt, the ALJ specifically noted the absence of peripheral neuropathy and lumbar radiculopathy. Thus, the undersigned finds that the ALJ's analysis of objective evidence of the same may result in a different decision, particularly in view of the statements from Drs. Vascik and Schmidt that Claimant's symptoms may remain the same despite the back surgery.

The ALJ further discredited Claimant's subjective complaints as inconsistent with his reported activities. The ALJ found that despite Claimant's "allegations of intractable pain, the claimant functions fairly well." (Tr. at 19.) The ALJ then proceeded to note that on December 20, 2006, Claimant reported that he attended church once or twice a week, played computer games, washed dishes, did the laundry, prepared simple meals, and drove an automobile to the store. (Id.)

However, the undersigned finds that the ALJ failed to note Claimant's qualifications pertaining to these activities. Claimant noted that he washed dishes for only 15 minutes and did laundry for 30 minutes to one hour, but that the pain worsened with these activities. (Tr. at 176.) Claimant further reported that he drove a vehicle to the store, but specifically noted that he went shopping only once a week for 15 minutes. (Tr. at 177.) He further noted that his wife sometimes had to drive "because it's hard for me to turn or stay seated the same way very long." (Tr. at 178.) In noting these activities, the ALJ failed to repeat Claimant's earlier mentioned activities of caring for himself with difficulty shaving, driving with difficulty twisting, performing light household activities with no bending, and mowing the grass on a riding mower with the ability to barely walk when he got off the mower. (Tr. at 16, 40-43.) As was the case in Hines, the undersigned finds that the ALJ improperly selectively cited tasks which Claimant was capable of performing in finding that he functioned fairly well, despite the extensive complaints of pain. The undersigned further finds that the ALJ improperly placed too much emphasis on the lack of objective evidence in discrediting Claimant's subjective complaints and symptoms. Accordingly, the undersigned finds that the ALJ's credibility assessment is not supported by substantial evidence, and that such assessment should be revisited in light of the new evidence presented to the Court.

Finally, Claimant asserts that the ALJ failed to consider Claimant's weight gain on his back pain. (Document No. 12 at 15-16.) Social Security Ruling 02-1p provides guidance concerning the evaluation of obesity in disability claims and discusses the consideration of obesity at different levels in the sequential analysis. See Social Security Ruling ("SSR") 02-1p (2002). In Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005), the claimant argued that the case should be remanded because the ALJ failed to consider her obesity. The United States Court of Appeals for the Third

Circuit affirmed and refused to remand, noting that the claimant did not mention obesity as a condition that contributed to her inability to work and that remand would not affect the outcome of the case. See id. at 553. The Court concluded that the ALJ was alerted by the record that obesity could be a factor, but that the claimant essentially failed to pursue this avenue by failing to indicate how it limited her abilities. Id. The Court quoted and followed the reasoning of a Seventh Circuit decision, Skarbek v. Barnhart, 390 F.3d 500 (7th Cir. 2004) (per curiam):

> An ALJ is required to consider impairments a claimant says he has, or about which the ALJ receives evidence. Although Skarbek did not specifically claim obesity as an impairment (either in his disability application or at his hearing), the references to his weight in his medical records were likely sufficient to alert the ALJ to the impairment. Despite this, any remand for explicit consideration of Skarbek's obesity would not affect the outcome of this case. Notably, Skarbek does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk. Additionally, the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.

Rutherford, 399 F.3d at 546 (quoting Skarbek, 390 F.3d at 504).

In the instant case, Claimant listed obesity as an impairment in applying for disability benefits and the ALJ found that it was a severe impairment at step two of the sequential analysis. Claimant alleges that because the ALJ did not mention specifically his obesity in finding that he was not entirely credible, the ALJ failed to consider the limitations resulting therefrom. Consistent with the decision in Rutherford, however, the undersigned finds that the ALJ's references to Claimant's obesity earlier in his decision and the specific references to Claimant's weight in the summary of the medical evidence, which is contained in the section devoted to the credibility assessment, is sufficient consideration of Claimant's obesity as required by SSR 02-1p. Additionally, even though

25

obesity is mentioned in the medical records, Claimant fails to assert how it contributes to his inability to work. As the Commissioner notes, the record is devoid of evidence specifying limitations due to obesity. As in Skarbek, the references to obesity are in the records and thus alerted the ALJ and other reviewers to the impairment.  The impairment was therefore considered in the credibility assessment, although indirectly. Without an indication from Claimant regarding how he is limited by this impairment, the undersigned finds that this specific argument is without merit.

3. Vocational Expert Testimony.

        To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

        Claimant first alleges that contrary to Social Security Ruling 96-9p, the ALJ failed to specify how frequent Claimant would need to change positions from sitting to standing, or how long he could stand at any one time. (Document No. 12 at 17-18.) Claimant asserts that while the ALJ noted Dr. Meredith's recommendation against standing more than ten or 15 minutes, he failed to indicate

the weight given this opinion. (<u>Id.</u> at 17.) The Commissioner asserts that the ALJ assessed a sit and stand option at Claimant's discretion, and therefore, satisfied the frequency requirement of SSR 96-9p. (Document No. 15 at 16.) The undersigned agrees with the Commissioner and finds that the ALJ's RFC assessment provided for "the ability to alternately sit/stand at his own discretion." (Tr. at 15.) The Commissioner further asserts that Claimant's allegation regarding the ALJ's consideration of Dr. Meredith's standing recommendation is without merit because the ALJ's RFC assessment provided a sit and stand option which was consistent with Dr. Meredith's recommendation. (Document No. 15 at 16.) The undersigned again agrees with the Commissioner's point in this regard and finds that though the ALJ may have committed error in not assigning a specific weight to Dr. Meredith's opinion, such error is harmless because a sit and stand option at Claimant's discretion accommodates Dr. Meredith's ten or 15 minute limitation.

Claimant next alleges that the ALJ failed to inform the VE of all of Claimant's limitations. (Document No. 12 at 18.) Specifically, Claimant asserts that the ALJ failed to advise the VE that due to Claimant's non-severe mental impairment, his recent memory was moderately deficient. (<u>Id.</u>; Tr. at 329.) The Commissioner asserts that Claimant attempts to have the Court re-weigh the evidence to find that the ALJ should have included a memory-related limitation in his hypothetical question to the VE. (Document No. 15 at 16.) The Commissioner asserts however, that Claimant's counsel did not question the VE about any memory-related limitations, that Claimant never alleged that memory problems affected his ability to work, or mention memory difficulties at the administrative hearing. (<u>Id.</u> at 17.) Additionally, the Commissioner notes that Claimant reported to Dr. Bakhit that he had no memory deficits and indicated in written forms that he had no memory problems. (<u>Id.</u>)

The undersigned again finds the Commissioner's point on this issue persuasive and finds that the record as a whole does not support a finding that Claimant had a memory-related impairment or limitation. As the Commissioner notes, Claimant specifically advised Dr. Bakhit that he had no memory deficits and Dr. Bakhit found that he had no history of lack of memory, concentration, attention span, language difficulties, or knowledge. (Tr. at 305, 308.) Claimant likewise did not report any memory problems on the forms submitted in connection with his applications for benefits. (Tr. at 130, 149-50, 179.) Dr. Brackenrich found that Claimant did not have any functional limitations resulting from his mental condition and Dr. Saar, the state agency reviewing consultant, likewise determined that Claimant's mental impairment was non-severe. (Tr. at 342, 344, 349.) Essentially, the only evidence of any memory deficit is contained in the report of Ms. Tina Dahl Wagner's consultative mental status examination conducted on July 8, 2006. (Tr. at 326-330.) Ms. Wagner assessed a moderately deficient memory after Claimant recalled only two of four words after a 30-minute delay. (Tr. at 329.) Accordingly, the undersigned finds that the ALJ properly omitted any memory limitation from his hypothetical questions to the VE because such limitation was not supported by the substantial evidence of record.

Finally, Claimant alleges that the VE's testimony cannot be substantial evidence because it is contrary to Social Security Ruling 96-9p because Dr. Brackenrich indicated that Claimant was completely unable to stoop, which therefore would impact the sedentary job base. (Document no. 12 at 18-19.) The Commissioner asserts that substantial evidence supports the ALJ's assessment that Claimant could stoop occasionally because three different medical sources opined that he could. (Document No. 15 at 17-18.) Moreover, the Commissioner asserts that Claimant's argument is moot because the VE identified jobs that required occasional stooping, as well as jobs that required no

28

stooping whatsoever. (Id.) Specifically, the ALJ identified the job of a surveillance-system monitor, which requires no stooping. (Id. at n.8.)

The undersigned agrees with the Commissioner and finds that the VE identified the job of a surveillance-system monitor in response to the ALJ's hypothetical questions, which job does not require any stooping. Accordingly, the undersigned finds that Claimant's argument is without merit and that the ALJ's decision in this respect is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court confirm and accept the foregoing findings, **GRANT** Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.), **DENY** the Commissioner's Motion for Judgment on the Pleadings (Document No. 15.), **REVERSE** the final decision of the Commissioner, **REMAND** this matter for further proceedings consistent with this Proposed Findings and Recommendation pursuant to the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106

S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United

States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81

L.Ed.2d 352 (1984).  Copies of such objections shall be served on opposing parties, District Judge

Faber, and this Magistrate Judge.

     The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy

of the same to counsel of record.

     DATE: February 1, 2010.

                               R. Clarke VanDervort
                               United States Magistrate Judge